1-722 Myrna Colon-Marrero et al. v. Liza M. Garcia-Velez, etc. Good morning, Your Honors. May it please the Court, Jose Nieto Mingo on behalf of Appellant Rosa Pelli, Liza Garcia-Velez, President of the Puerto Rico State Elections Commission. Your Honor, I would like to reserve three minutes for rebuttal. Yes. Thank you. It's really incredible, it's hard to believe that almost three years later, and almost before this very same panel, we're here arguing essentially the same issues as we were before the 2012 general election. For more than three years, the Puerto Rico State Elections Commission has had to spend considerable time and resources defending this case that should have been dismissed a long time ago. Appellees have been so bold as to compare the refusal to comply with a simple and inexpensive requirement of the Puerto Rico Electoral Code, the reactivation requirement in order to vote, that they have even compared it to the state laws that were specifically enacted for the purpose of denying African Americans the right to vote. We respectfully submit that there's nothing remotely similar in this case. Contrary to what appellees have argued throughout this proceedings, nobody in Puerto Rico, nobody in Puerto Rico is eliminated or excluded from the voter registry. What happens is the following, and I just want to walk you through very quickly to the very simple reactivation requirement. First of all, counsel, first of all, give us some credit. I think we understand what the voting procedure is. But I've got a very practical threshold question, right? Is this case moot? This is a case which was brought with respect to the ability of the plaintiffs to be enrolled to vote for the 2012 election. That election is in the rearview mirror. That's come and gone. Their circumstances have changed because they have now been, they're not people who simply have failed to vote in one election. They failed to vote in two. There's no request for relief with respect to the 2016 election. And there is nothing in the record, nothing, as to what kind of notice, if any, the plaintiffs have received. So with those in mind, do we have a live case in controversy here? Well, I believe just in light of the remedy or the order issued by Judge Cereso, we do. But the order can't make the case live. The case is either live or it isn't. Well. Because if the case isn't live, then that order is a nullity. Well, again, Judge Cereso ordered the Puerto Rico State Elections Commission to reactivate every elector that did not vote in only one election. And the reason why the state elections commissions go through such great lengths in the brief, in explaining the procedural history of the case, is to show that the reason why that occurred, the reason why that is a fait accompli, is because after the last time we were here and the case was remanded to the district court, the state elections commission completed its procedure of inactivating the voters that did not vote in the last election. That is a process that began in February of 2013 and was completed by mid-May. At that time, there was absolutely no impediment, no order, no relief was requested. I'm asking the state elections commission not to do what Puerto Rico law mandates must be done with people who do not vote in a general election. So let me make sure I understand this. So what you're saying is mootness is avoided because this action has a class-wide scope? Judge Cereso certainly gave it so. Well, has it ever been certified as a class action? No. No, it hasn't. It hasn't, but there is a specific order directed. The remedy granted by Judge Cereso. I understand what the order says, but a judge's order can't affect mootness. If the action is moot, that order is void. And I'm just trying to decide, determine whether we've got a live controversy here. Why aren't you embracing Judge Cereso's argument? Well, no, no, I would embrace it, certainly. I'm just concerned. I'm just concerned about leaving. Excuse me, your question. I didn't mean to say argue. No, no, I'm concerned about leaving the Puerto Rico State Elections Commission vulnerable to a charge of contempt of court because that order is there. That order is directed to the, and I have very concerned staff asking every day, should we be reactivating these people or not? We have all sorts of planning to do in preparation for a 2016 election, and there's an order of a federal judge saying that all these people need to be reactivated. So as much as I, of course, will embrace and do embrace Judge Celia's suggestion, I think that it is important to finally, for the Puerto Rico State Elections Commission, it is essential to have a ruling on the applicability of these specific provisions of the NVRA that this court already held that were not applicable to Puerto Rico, and that now Judge Cereso is reapplying them through HAVA. And we think one of the biggest problems with this case is that courts have not. Excuse me, counsel. Did you just say that in a prior ruling we held that the provision of HAVA at issue here is not applicable to Puerto Rico? The NVRA provision is not applicable to Puerto Rico. And what we have argued all along, even by the 2012 appeal, is that HAVA only, what HAVA does is only incorporate, by reference, the same provisions that this court held was not applicable to Puerto Rico. What I'm saying is that we need a ruling because the problem that we've had all along is that these issues of law that should be resolved by the courts, by the district court, by this court, are left bending. And since there's no definitive ruling on the legal issue, then we have to face litigation. We have to face all sorts of claims about violations of constitutional rights. And the State Elections Commission position has been all along, these provisions are not applicable to Puerto Rico. The United States Department of Justice knows that. They act as if we're not required to. And it presents a bigger problem, just to be fair, for the administration of the electoral system, not having certainty as to what the law is, what federal law requires us to do. And the policy implications go far beyond the interest of the appellees in this particular case. Can I ask you a question? I have forgotten whether this is in the record or not. How much is the total in HAVA funds that Puerto Rico has received? And is that an ongoing? It is ongoing. It is ongoing. But it has absolutely no relations, no relation with the issue of whether or not a person that has not voted in a general election can vote without reactivating. Do you know the number that I asked for? I'm sorry? The amount of funds that Puerto Rico has received. Do you know the answer to that question? I don't have it right now, Your Honor. I think that it's important that the court has a clear understanding of what is at stake here in the reactivation process. Because the reactivation process is something that has a legitimate purpose. The legitimate purpose is to ensure that we have in Puerto Rico information that is accurate in the voter registry. And that people who are not entitled to vote, that do not have the right to vote on the Puerto Rico law, do not vote illegally. That is the purpose. And that is certainly a legitimate purpose. And the process is as follows. It's something that people can do at any time throughout the 110 boards of permanent inscriptions that work throughout the year to make these specific types of transactions. Nobody can be turned away unless it's a person that admits, for example, that does not reside in Puerto Rico and nevertheless wants to vote. When somebody is reactivated, their file is pulled and that record is in the voter registry. It's only flagged showing that the person did not vote. And once the person provides the relevant information, that person has to leave a record that the information that she or she provided is accurate. So we have that declaration on the road. And this process ensures that the voter registry in Puerto Rico has information that is accurate. And that is relevant, Your Honors, because in Puerto Rico, not everybody receives the same ballots during the election, during the general elections. Some people need to get ballots for mayors, others for district or representatives for a particular district. And people cannot simply choose where they want to vote for mayor, for example. We have a lot. You seem to be saying that the procedure described in HAVA, describing people who have not voted in two consecutive general elections, that they would have to receive, they'd also have to receive notice that they may be removed from the voting list because of their, the fact that they haven't voted two times. If that procedure encourages voter fraud, why do you take that position, that that would encourage voter fraud, that that HAVA procedure? Sure. If people were left automatically, which is what the claim is, according to the provisions of the NVRA, I want to stress that. It's not HAVA that provides that. It's the NVRA. Or at least that is the State Elections Commission position. If I did not vote in the last election because I moved to Orlando, Florida, like thousands of Puerto Ricans have done in the recent years, and I go back to Puerto Rico on election day, I will be active in the registry. And I will be voting without having the right to vote in Puerto Rico because I am no longer domiciled in Puerto Rico. That, Puerto Rico has an interest in preventing that from happening. Particularly when we have, for example, more than half a million Puerto Ricans in Orlando. And you know how, I mean, the margins by which elections are decided in Puerto Rico. Mayor races in Puerto Rico are decided sometimes by thousands of votes. So during the last time we were here, we heard people in Puerto Rico saying, if we win this case in the Court of Appeals and everybody can vote, I already have lined up several charter planes to bring all these people from Florida to vote in Puerto Rico. Is that in the record? That fact, is that in the record? What is in the record, your honor? The fact that you just stated. No, your honor. Okay. I want to point out that the appellees in this case have never expressed a single justification for the refusal to reactivate their electoral records. For people who do not want to go to the boards, the State Election Commission has a mobile unit that will go to their houses to reactivate their records. It costs nothing. It happens during the entire year. And there is simply no justification for refusing to comply with this requirement. It is a requirement that ensures that the State Election Commission has accurate information, and it's also a requirement that does not violate in any way, in any way, shape, or form federal law. These laws that appellees refer to in their briefs are trying to remedy a situation that does not exist in Puerto Rico. We don't have in Puerto Rico a history of racial discrimination and of systematically trying to disenfranchise people on account of their race. We don't have that reality in Puerto Rico. And this requirement is applicable to everybody. It has been in place for over 40 years. It has never been challenged. The Department of Justice knows about it. And then all of a sudden, for the 2012 elections, police decide to bring a test case. Thank you, Counsel. You've reserved some time. Thank you. Good morning, Your Honors. For the record, I would like to go straight to Judge Celia's mootness concerns, because otherwise we would be asking for an advisory opinion, which is one of three things that the Court cannot do. Did you say one of three things? One of the things. Oh, the things. There are more than three. Yeah, there's more than three. Not that many, but there's more than three, certainly. No, I said the things. All right. Certainly this case was the issues resolved by Judge Cerezo in this case, namely whether or not under HAVA, the same right asserted on the NBRA applied to Puerto Rico, was resolved because he was remanded by this Court in November. This case has been on appeal twice before. The last time it was on appeal, it was less than 24 hours before the general election in Puerto Rico, on account of an ordinary native jurisdiction that Judge Cerezo had issued the day before. And the matters were remanded, knowing presumably that they would be resolved after the 2012 election, after the second election in a row that indeed these voters had not voted. And as a matter of fact, what these voters are challenging still today is not a removal, because they failed to vote in two consecutive elections, but rather they're challenging their initial removal from the lists for failing to vote in the 2008 elections. But the only effect of a determination that that initial removal was wrongful would be to declare that they were eligible for the 2012 election. And to restatement to the active voter rolls, which is what Judge Cerezo said. But there may have been intervening events. See, of course, we don't have a factual record, but apparently they didn't vote in 2012. All right? They did not. Actually, they were challenging their removal during the time of the elections. Indeed, the main reason why they didn't receive any injunctive relief at that time was because the Court determined that their challenge had been filed too close to the general election and there were implementation problems. We even had evidentiary hearings in the district court ordered by this Court for fact-finding in regards to practical concerns of logistics. So are you saying that this case isn't moot because there's a practical effect on the plaintiffs? If they win reinstatement, they will now be eligible to vote in 2016? Yes, Your Honor. As it stands, the declaratory judgment that is being challenged here on appeal orders that the voters on the I-8 list, which is what they call this in the commission, inactivated because they didn't vote in 2008. It's the code that they use, I-8 voters. And I believe that Judge Cerezo uses that term at some point in her opinion, be reinstated into the voting records because they were excluded in violation of HAVA. So therefore, the action that they challenge is still very much alive today. Thank you. Thank you very much. Counsel, did you have the opportunity to make your full argument? Well, actually, I was going to argue on another matter, but since the mootness issue came up. Please take a minute and do that. Well, we respectfully believe that there's no question that HAVA applies to Puerto Rico. It defines states as broadly as possible, the 50 states, D.C., and all the territories, including the Commonwealth and the Virgin Islands, the Pacific Islands as well. And Section 303 squarely says that to be consistent with HAVA, the same prohibition of removal from the voter roll applies on the two-election issue. So I believe that the core issue in this case is whether or not that is a right that an individual voter can enforce through Section 1983, and we respectfully believe that it is. Counsel, either you or other counsel, I'd like you to address with respect to the position that the right that you describe in HAVA, that that right is enforceable through Section 1983. How do you read the Supreme Court's decision in Bruner with respect to that? How do you suggest we should read that decision with respect to that contention? Well, Your Honor, that decision is actually a one-paragraph decision setting aside a TRO, a Temporary Restraining Order, and on grounds that there was not enough likelihood of success because of the statute that provides that the Attorney General may enforce these provisions through injunctions and declaratory judgments. We must remember, and I'm going to borrow a term from Judge Celia, that the strongest possible medicine in injunctive relief that there is is a TRO. It's an injunction that is issued without a hearing, and this is what these people had on the eve of the 2008 election in Ohio. This is a case that I believe made it all the way from the District Court to the Supreme Court in about two weeks. And what the Supreme Court did in that occasion in the face of an election and in the face of a TRO that had been affirmed even by an unbanked Sixth Circuit was to say, listen, we cannot say that there is enough probability of success with that statute at this juncture with this limited record because in a TRO, the record is a verified complaint pretty much and probably a memorandum of law, but there's no evidentiary record. As I take it, this is a decision that the Supreme Court issued a few days after the unbanked court in the Sixth Circuit had affirmed this. As a matter of fact, we cite in our brief, there's a 2014 decision by the Fifth Circuit that it's Dedgen v. Janik. It's a 2014 decision in which they construed Bruner, the Supreme Court decision, as merely suggesting that there is no private cause of action. Even after Bruner in Crowley v. Nevada, the Ninth Circuit, this is 2012, it also approached the matter as an unresolved issue, but in that case declined to resolve it because the plaintiff lacked Article III standing to bring the matter. I believe he was a politician that was not entitled to the remedies under HABA because otherwise under the three-factor analysis that the Supreme Court has established, this is certainly a provision that is intended to benefit the plaintiff. This is a provision that is intended to benefit individual voters. I believe that the provision would be close to unenforceable if it depended solely on the Attorney General bringing an action on behalf of John Doe of Boston, who was removed from the list because he failed to vote in a single election. It is also a concrete right, and it is a right that imposes a duty on the states, which is the classic federal right that is enforceable under 1983. Well, HABA does, contains, you described one. There are a number of enforcement mechanisms in HABA itself. Are those mechanisms sufficient to overcome the presumption that Section 1983 is available for enforcement? In other words, could your opponent successfully argue that there's a comprehensive enough enforcement scheme that precludes any notion that Section 1983 should be available to enforce the HABA right? Well, actually, that's an argument they haven't made, but it's a very good question. The thing is that not in the context that it is argued here. And this is because this is not just HABA standing alone and a violation of HABA standing alone, but we have a statute, a Puerto Rico statute, that is contrary to HABA. It's definitely irreconcilable with HABA, so we have a preemption issue. And I don't believe that an administrative process is the proper procedural vehicle to state a matter under the supremacy clause. Thank you, Counsel. There's a preemption. Thank you. Good morning, Your Honors. John Schlamp-Peters on behalf of the defendant appellee, Jorge Davila, as Electoral Commissioner of the New Progressive Party. This morning I'm going to address the issue of whether the district court properly determined that HABA applies to Puerto Rico and that Article 6.102 of the Puerto Rico Electoral Code violates Section 303 of HABA, despite this court's holding that the National Voting Rights Act is inapplicable. The court below relied on the critical distinction that HABA specifically includes Puerto Rico within its definition of state, whereas in NAVRA, as this honorable court also pointed out, NAVRA did not include Puerto Rico in its definition. The district court also relied on the fact that the ballot for the federal office of resident commissioner of Puerto Rico was included on the same ballot with the governor of Puerto Rico. And contrary to what appellants contend, that HABA merely incorporates by reference the provisions of NAVRA, HABA separately sets forth the deactivation requirements in its own language. It does not simply refer to NAVRA, which actually as it does with other provisions in HABA. But for this provision, it sets it forth separately and then says that the reference to NAVRA is simply to ensure it is interpreted as quote-unquote consistent with NAVRA. The appellant also, its primary argument in its reply brief relies on a subparagraph of Section 303 for the alleged provision that if a state is exempt from NAVRA, then that state shall remove the names of ineligible voters in accordance with state law. But the appellant only quotes from part of the clause. The full clause states that if a state is described in Section 4B of NAVRA, that state shall remove the names of ineligible voters in accordance with state law. This clause is not relevant for two reasons. First, Puerto Rico is not described in Section 4B of NAVRA. So the clause is not even applicable to Puerto Rico. There were only six states that fit within that Section 4B exemption and Puerto Rico was not one of them. And second, and I know this reason was not included in my brief, the clause does not pertain to the deactivation prerequisites and the accuracy of the voter rolls. That is at issue here in this case. The title of the clause that the appellant was referring to is computerized list maintenance. And it pertains to the technical procedures for removing from the computer list a voter that has already been determined to be ineligible based on the deactivation prerequisites. Also looking at the entirety of that subparagraph, it starts out by saying if an individual is to be removed from the list, then remove in accordance with certain procedures. So it's only after the voter has been determined to be ineligible. There's nothing in NAVRA which indicates that even though the statute, sorry in HAVA, that indicates that even though the statute as a whole applies to Puerto Rico, this specific clause, Section 303, would not be applicable. And there's no congressional intent to exclude Puerto Rico. So for these reasons, we believe that this court should affirm the district court's holding. Thank you, Your Honor. Good morning, Your Honor. Attorney Carlos Del Valle on behalf of the plaintiffs, police, and cross-appellants. We're going to address ourselves basically to the cross-appeal in which we argue that by excluding Puerto Rico from the National Voter Registration Act, Congress engaged in a First Amendment and equal protection violation. NAVRA is a very important piece of democratic statute insofar as it seeks to remedy the under-representation of minorities originally in the political process of the United States. And it does so by the two main components of its provision. First of all, it promotes voter turnout through ample registration mechanisms that were not applied in Puerto Rico. And second of all, it impedes the removal of voters to the sections that were decided by federal counsel. By denying American citizens that live in Puerto Rico, and if you don't mind, I'm going to call them Puerto Ricans, the rights and goals under NAVRA, there is an undermining of a fundamental First Amendment value, which has been called the most important value of all, the right to vote. And by denying the right or undermining the right to vote, you're also acting contrary to another fundamental precept of this nation, that is that government derives its just powers from the Constitution. Here, in this case, the exclusion of Puerto Rico from NAVRA does not serve any compelling state interest. At the most, in your prior decision, you mentioned that it might serve the purpose, or the exclusion might serve the purpose of impeding that Puerto Rico have to spend money in the implementation of NAVRA. But the implementation by the state of itself is not a compelling state interest. This is not like the case of Harry v. Rosario or Califano v. Torres, which were socioeconomic legislation where Congress had to spend money with respect to federal programs that apply in Puerto Rico. This is purely a fundamental right to vote. Here, the only reason, the only compelling state interest that comes to my mind is the futility of allowing Puerto Ricans to vote when their votes don't count towards the election of their president. Or towards the election of other congressmen. But this in itself, the futility of their vote, cannot be a compelling state interest. Because NAVRA does apply to the federal elections for federal office. And more than anything else, the state of colonialism can never serve a compelling state interest. Here, the fact that Puerto Ricans do not vote for the president or do not vote for Congress, nonetheless, does not take away that they have the right to participate on what I call voting equality with respect to those federal electoral laws that do apply to them. And that apply specifically to their vote to federal office, which is covered here, for the resident commissioner. This is like the reasons of separate but equal doctrine that was served as a legitimate state reason to exclude or to segregate persons in the 50s under Plessy. That is not a compelling state interest. The fact that people might belong to the same sex, the animosity towards them has never been found to be a compelling state interest. And I submit to you the fact that Puerto Ricans are in a colonial situation where they do not have any power over their presidency or power to vote for their president, as you found in your EGATUA cases for the Congress, does not take away that they do have a fundamental right to vote on equal basis as other citizens with respect to NAVRA. Well, let me play the devil's advocate on this, all right? The only federal office that Puerto Ricans can, as you described them, can vote for is the office of resident commissioner. That's an office that exists only in Puerto Rico, right? Why isn't it rational to say that Congress, which has broad powers to set criteria, for voting in other federal offices, can say that with respect to this office, which doesn't exist anywhere else, we think that Puerto Rico should be allowed within very wide limits to make the rules? Because the term federal office is covered by the National Voter Registration Act. Oh, yes, no, I understand that. I understand that, but isn't that a reason? Your complaint is that Puerto Rico is left out of the NVRA. And what I'm saying to you is that seems to me to be a rational decision on the part of Congress when you consider that there is only one federal office that Puerto Ricans are eligible to vote for, and that federal office is a peculiarly hybrid office between the federal government and Puerto Rico that doesn't exist anywhere else. You've got rational basis review on congressional legislation. And whether I think that's a good basis or a bad basis, it certainly seems to me to be a rational basis. I understand your argument, Judge Celia. And I think it comes down to the arguments of Harry v. Rosario, Califano v. Tote. Ultimately, that basis is that Puerto Rico is a territory, and therefore, with respect to the territories, you don't have to apply the same set of rules that apply to the other states of the nation. And what the Supreme Court has said that with respect to the territories, that might be right. You might use a rational basis test with respect to anything that's socioeconomic legislation. But insofar as the insular cases are still good law, when it comes down to the fundamental right to vote, fundamental rights, and here we're alleging that there's a fundamental right to vote, a voting equality, that if you're going to make distinctions as to whether you should treat Puerto Ricans different from American citizens living on the mainland, insofar as you have a fundamental right to vote, that distinction between the colony and the states cannot be held unless there's something else that you can do. Unless there's a compelling state interest as there was the economic reasons, the socioeconomic reasons that held it up in the case of Califano and that held it up in the case of Harris. But here you don't have anything holding it up. The only thing you have holding it up is prejudice. And I say prejudice in the sense that we have to be careful not to fall into the principles that were stated in the case of Balzac v. Puerto Rico in 1922. We have to be careful of holding the people of Puerto Rico to be living in a nation and compact and oceanic community trained to 100 years of colonialism and holding that they're unfit to have voting equality with respect to electoral laws. Because if you do that, only because they cannot vote for their president or they cannot vote for Congress, basically you're reproducing the logic of pleasure. You're reproducing the logic of pleasure. But just to make sure that I understand, in terms of the relief that was requested in the complaint or that portion of the relief that might still be viable after the 2012 election, if you prevail on the have a claim as argued by co-counsel here, counsel for the other parties on your side, is there additional relief that's requested under the NVRA claim that you have requested? Yes, Your Honor, there is. And that is what? NAVRA is not only the disposition that was adopted by HAVA, the heart of NAVRA are the registration procedures. Basically, when the findings were made... What relief is it that you are asking for that you can only, that was asked for in the complaint, that you can only obtain if you prevail on this process? That you amplify the mechanisms for registering under Puerto Rico for any election that involves federal office. For example, and I'll give you the three basic ones on the NAVRA. Under NAVRA, you can register by mail. Under NAVRA, you register every time you get your driver's license. The act originally used to be called the Motor Registration Act. And under NAVRA, you can register any time that you go to a public library, that you ask for public assistance. And these forms of relief were requested in your complaint? I thought the complaint only requested reinstatement and eligibility to vote in the 2012 election. No, Your Honor. The relief, as we spell out in our complaint, as for the whole gamut of release under NAVRA, what happens is that when it first came here on the preliminary injunction, it was limited to that immediate, not being eliminated from the list. But the complaint and the motions that we have filed before the court amply emphasize the fact that we are leaving out important parts of NAVRA that have to do with the voter turnout. The parts that have been held up have to do only with voter removal. But there's an important component of NAVRA that has to do with increasing voter turnout by amplifying registration mechanisms. Did Judge Cerezo explicitly rule on this part of the complaint? No, she did not. She basically, on Chief Judge Howard's project, she says since I'm giving you the relief under HAVA, I don't have to go into any other type of relief that you were questioning under NAVRA. So she did not address any of the NAVRA claims. My time is up. Thank you. Unless you have any further questions, I appreciate your attention. Thank you. Your Honors, this court decided that the NBRA does not apply to Puerto Rico. That is the law of the case. Brother Counsel has not explained at all why, in light of that decision, he did not try to seek certiorari review at the Supreme Court or ask for a re-hearing or a re-hearing on bank. And there was no indication whatsoever in the 2012 decision that this court was going to revisit that issue. It was a decision that that statute does not apply to Puerto Rico. And that is, that was very, very important, notwithstanding the fact that the decision came so close to the election. Because to the extent that that decision had not been explicitly made by this court, then a police will continue arguing that those reliefs, exactly what Mr. Del Valle just asked. All those things that he wants Puerto Rico to comply with are requirements contained in the NBRA. And that statute simply does not apply to Puerto Rico as this court held. On pages 24 through 25 of my brief is a summary of the stipulations that were made by the parties. And that's the issue that Judge Cerezo had to decide. And they were very simple. These two persons, these two plaintiffs, these two police did not vote in a prior election. They wanted to vote without complying with the reactivation requirement. And now that the NBRA does not apply to Puerto Rico, and we all know that, then what is their remedy? And Judge Cerezo, in her opinion, devotes less than half of a paragraph to that. And that is the issue before this court. And your honors, the way to see this case has to be that in the absence of a violation of a federal statute, which is what Judge Cerezo had been entertaining for the last three years, the federal courts simply have no business, no business overseeing what happens in the Puerto Rico elections. And that has been the position of the Department of Justice and of the federal courts until this case was brought. Nothing extraordinary happened in the 2012 election, except that plaintiffs decided, police in this case, decided to bring a test case to see what happened. There was no indication that they could not comply with the reactivation requirement, none, none. They received, the main plaintiff in the case, received actual notice. When she actually came to the commission for the first time, there was time to reactivate her record, and she didn't do so. She had time, everybody in Puerto Rico has had time after this case to reactivate their record. There's simply no basis for federal intervention in this case. There is none. As a result of that, the court has to very closely, again, revisit the issue of federal jurisdiction in this case. Thank you.